## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AMNIEST WILLIAMS, individually, and as next friend on behalf of her minor son, M.H.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 26-CV-00136-SPM** |
| **CAHOKIA UNIT SCHOOL DISTRICT #187 BOARD OF EDUCATION, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

On February 10, 2026, Plaintiff Amniest Williams, individually and on behalf of her minor son, M.H., filed an Amended Complaint alleging disability discrimination against the Cahokia Unit School District #187 Board of Education ("District 187" or "the District") and the Illinois State Board of Education ("ISBE") pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–65 ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Illinois Human Rights Act, 775 ILCS 5/1-101–5/10-105 ("IHRA"), and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1–60/30 ("CRRRA"), seeking an award of monetary damages and attorney's fees. (Doc. 6). Before the Court is District 187's Motion to Dismiss and Strike Plaintiff's Amended Complaint. (Doc. 11). For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

## FACTUAL AND PROCEDURAL BACKGROUND

M.H. is a five-year-old boy diagnosed with a speech and language impairment that substantially limits his ability to speak, think, and learn. (Doc. 6, p. 3). He lives with his mother, Amniest Williams, in Cahokia, Illinois. (*Id.*). In August 2023, Williams enrolled her son in a part-time pre-K program within District 187. (*Id.*). Soon after, the District began providing M.H. with the speech and language accommodations he needed to be an active participant in the pre-K program. (*Id.*). But in Fall 2024, the District discontinued M.H.'s services without notice. (*Id.*). Once Williams realized that her son was no longer receiving the accommodations he needed to access a free and appropriate public education ("FAPE"),[1] she attempted to contact Kelly Richards, District 187's Interim Director of Special Education, to request that his accommodations be reinstated. (*Id.*, p. 4). The District made no meaningful effort to reply.[2] As a result, M.H. finished the Fall 2024 semester without his accommodations. (*Id.*, pp. 3–4).

On June 6, 2025, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights, and on February 6, 2026, Plaintiff filed a Complaint in federal court. (Doc. 1). Four days later, Plaintiff filed an Amended Complaint which

---

[1] A FAPE "comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. §§ 1401(9), (26), (29)).

[2] The details surrounding the District's efforts to reply to Williams' request are less than clear. Plaintiff alleges that Richards, or perhaps the District as a whole, ignored her communications, "refused to meaningfully engage her advocacy efforts, denied her access to information and participation regarding the cessation of M.H.'s speech-language services, and was deliberately indifferent to her right to advocate for M.H.'s meaningful participation in District programs." (Doc. 13, p. 7).

added the ISBE as a co-defendant, identifying them as the state agency responsible for overseeing the administration of the Individuals with Disabilities Education Act, 42 U.S.C. §§ 1400–82 ("IDEA"). (*See* Doc. 1, pp. 1, 3; Doc. 6, pp. 1, 3). The Amended Complaint alleged that the cessation of M.H.'s accommodations and District 187's unresponsiveness to Williams constituted unlawful disability discrimination under the ADA, Section 504, the IHRA, and the CRRRA. (Doc. 6).

The Amended Complaint alleged six causes of action: four counts of disability-based discrimination against M.H. for District 187's failure to provide him with reasonable accommodations in violation of the IHRA (Count I), Section 504 (Count III), the ADA (Count IV), and the CRRRA (Count VI), and two counts of discrimination against Williams on the basis of her association with M.H. in violation of the IHRA (Count II) and ADA (Count V). (*Id.*, pp. 4–14). The District moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for failure to state a claim and lack of subject matter jurisdiction, seeks judgment on the pleadings under Rule 12(c), and requests the Court strike Plaintiff's prayer for punitive and emotional damages under Rule 12(f). (Doc. 11, ¶¶ 2, 7–8; Doc. 12, pp. 3–14).

### REQUEST FOR DISMISSAL FOR FAILURE TO STATE A CLAIM

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint's sufficiency, the Court must "construe it in the light most

favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citing *Reynold v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must make a claim that there is more than a "sheer possibility" that the defendant acted unlawfully. *Iqbal*, 556 U.S. at 678.

To state a claim under Title II of the ADA, Plaintiff must make a prima facie showing that M.H. is (1) a qualified individual with a disability, (2) who was denied the benefits of the services, programs, or activities from District 187, (3) by reason of his disability. *See* S*haw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022) (citing 42 U.S.C. § 12132). The standard for stating a claim under Section 504, the IHRA, and the CRRRA is indistinguishable from the standard for stating a claim under Title II of the ADA. *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (first quoting *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003), then quoting *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004)) (concluding that Section 504 and the ADA are "materially identical," and that "courts construe and apply them in a consistent manner."). Likewise, with the IHRA. *Zemater v. Pub. Action To Deliver Shelter, Inc.*, No. 25-1865, 2026 WL 1487863, at *2 (7th Cir. May 28, 2026) ("To avoid dismissal, [plaintiff] needed to plausibly allege that he has a disability as defined by the IHRA, ADA, or Rehabilitation Act. We analyze claims under each act using the same framework.").[3]

---

[3] Although the court in *Zemater* was, in this passage, discussing Title I of the ADA, the Seventh Circuit has held that the standard for stating a claim under Title I is functionally identical to the standard

As is the case for the CRRRA. *See Rogers v. Dart*, No. 24-CV-03739, 2025 WL 790740, at \*3–4 (N.D. Ill. Mar. 12, 2025) (treating a violation of federal antidiscrimination statutes as a violation of the CRRRA). Section 60/15 of the CRRRA states that a violation of either Section 504 or the ADA "shall constitute a violation of this Act." 775 ILCS 60/15 (citation modified). Therefore, if the Court concludes that Plaintiff has stated a claim under any of these statutes, then that is enough to conclude that they have stated a claim under all of them. *See Ross v. Cmty. High Sch. Dist. No. 155 Bd. of Educ.*, No. 3:23 C 50339, 2026 WL 1083815, at \*8 (N.D. Ill. Apr. 22, 2026).

M.H. is a "qualified individual with a disability" under the ADA. That term refers to a disabled person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity," where a "public entity" is any State or local government or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §§ 12131(1)–(2). Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "a record of such an impairment." *Id.* §§ 12102(1)(A)–(B). For the purposes of Title II, a major life activity includes, but is not limited to, "learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). M.H. has a record of impairment, that is, being diagnosed with a speech and language impairment. (Doc. 6, p. 2); *see* 42 U.S.C. § 12102(1)(B). His condition also significantly

---

used for stating a claim under Title II. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999) ("Perhaps most significantly, the ADA's legislative history indicates that the methods of proving discrimination under Titles I and III of the ADA also apply to Title II.").

limits three "major life activities"—learning, communicating, and thinking. (Doc. 6, p. 3); 42 U.S.C. § 12102(2)(A). The fact that he received speech and language therapy from District 187 between August 2023 and Fall 2024 suggests that he met "the essential eligibility requirements for the receipt of services" administered by a public entity. (Doc. 6, p. 3); 42 U.S.C. § 12131(1).

Plaintiff has also sufficiently alleged that M.H. was "denied the benefits of the services, programs, or activities of a public entity," in violation of the ADA. 42 U.S.C. § 12132. The benefit in this case was access to a free and appropriate public education, or FAPE.[4] (Doc 6, pp. 2–4).

The final question, then, is whether M.H.'s inability to access a FAPE was "by reason of" his disability. 42 U.S.C. § 12132. The Court concludes that he was. Both the Supreme Court and the Seventh Circuit have held that, in order to determine whether something occurred "by reason of" something else, a plaintiff must show that the occurrence "would not have happened 'but for' the purported cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020); *see A.H. by Holzmueller*, 881 F.3d at 593; *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir.

---

[4] The IDEA is somewhat of a convoluted statute, and its terminology reflects that fact. *See Fry*, 580 U.S. at 158 ("Welcome to—and apologies for—the acronymic world of federal legislation"). In the context of Title II, the term "FAPE" is largely synonymous with a quality "education." After all, a FAPE is merely a "free appropriate public education." So, claiming that M.H. was unable to access a FAPE is functionally equivalent to the statement that he was unable to access a quality education. An "individualized education program," or "IEP," is the "primary vehicle" by which the IDEA facilitates disabled students' access to a FAPE. *Id*. It "documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how [the student] can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that [they] can 'advance appropriately toward [those] goals.'" *Id*. at 158–59. Modifying or eliminating a student's IEP can result in them losing their access to a FAPE. This is what Plaintiff alleges in the Amended Complaint—because M.H. lost his speech and language accommodations (a part of his IEP), he was unable to function in an academic environment. (Doc. 6, pp. 3–4). He could not access a free and appropriate public education as a result.

2006); *Washington v. Indiana High Sch. Athletic Assoc.*, 181 F.3d 840, 849 (7th Cir. 1999). This but-for test instructs courts "to change one thing at a time" in a situation "and see if the outcome changes. If it does, we have found a but-for cause." *Bostock*, 590 U.S. at 656. So, in this case, the but-for test would be satisfied if it can be shown that M.H.'s inability to access a FAPE would not have happened "but for" his speech and language impairment. *See id.* at 656–57; *A.H. by Holzmueller*, 881 F.3d at 593. This Court concludes that, taking all pleaded facts as true and making all reasonable inferences in favor of Plaintiff, it probably was. When M.H. lost his accommodations, he could not function in an academic environment. (Doc. 6, p. 3). He those accommodations to access a FAPE. If he were not disabled, then that would not have been an issue. So, M.H.'s inability to access a FAPE would not have happened "but for" his disability. It does not matter whether staffing shortages were the more direct cause of the cessation of M.H.'s accommodations. (Doc. 11, ¶¶ 5–6; *see* Doc. 13, p. 11). The standard for stating a claim under Title II is the but-for test, which is satisfied even if there are other, more proximate causes of the denial of access to the services of a public entity.[5]

---

[5] According to the District, for a plaintiff to state a claim under Title II of the ADA, they must show that they were denied public services "*solely* by reason of his or her disability" (Doc. 12, p. 12, (quoting 29 U.S.C. § 794(a))). But the Seventh Circuit has been clear that the "solely by reason of" standard is not the one courts ought to apply when determining whether a plaintiff has stated a claim under Title II. *A.H. by Holzmueller*, 881 F.3d at 593; *Wisconsin Cmty. Servs.*, 465 F.3d at 752. While it is true that Title II of the ADA states that "the remedies, procedures, and rights set forth in section 794(a) of Title 29 shall be the remedies, procedures, and rights" of section 1312 of the ADA and that section 794(a) states that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance," the plain meaning of the ADA is clear and contradicts the standard promulgated by section 794(a). 42 U.S.C. § 12133; 29 U.S.C. § 794(a) (citation modified). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "By reason of" is not the same as "solely by

Taken as a whole, Plaintiff has stated a claim under Title II of the ADA. [6] Because stating a claim under Title II is functionally identical to stating a claim under Section 504, the IHRA, and the CRRRA, *see supra* p. 5, Plaintiff has stated claims under those statutes as well. The District's Motion to Dismiss under Rule 12(b)(6) is **DENIED**.

It does not matter if Plaintiff cited the wrong section of the IHRA in their Amended Complaint. (Doc. 6, pp. 5–7; *see* Doc. 12, pp. 12–13;); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) ("We held that a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.'" (citation modified) (quoting *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992))). Giving her leeway on misciting the IHRA is appropriate since anything else might thwart the stated aims of the Act. "As remedial legislation," wrote the Illinois Supreme Court, "the Act must be liberally construed to achieve its purpose—here, the prevention of unlawful

---

reason of." If Congress had wanted to add the word "solely" to section 12132, it could have. It is not this Court's prerogative to add new terms to a statute when its plain meaning is clear. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (citing Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533–34 (1947)). This is why the Seventh Circuit has unequivocally held that district courts must apply the but-for standard when evaluating claims pursuant to Title II of the ADA. *A.H. by Holzmueller*, 881 F.3d at 593; *Wisconsin Cmty. Servs.*, 465 F.3d at 752.

[6] Other courts in this Circuit have reached the same conclusion in similar situations. *See, e.g.*, *Hammond as next friends of R.W.H. v. Cahokia Unit Sch. Dist. #187*, No. 3:25-CV-01283-DWD, 2026 WL 852531, at *6–7 (S.D. Ill. Mar. 27, 2026) (reaching the same conclusion as this Court in a near-identical dispute between District 187 and a disabled child whose accommodations were terminated due to staffing shortages); *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 781–85 (N.D. Ill. 2024) (finding that the standard for stating a claim under Title II and Section 504 are equivalent and showing that the failure to accommodate a disabled child's educational needs passed the *Iqbal-Twombly* standard for stating a claim under them).

discrimination in public accommodations for all individuals." *M.U. By & Through Kelly U. v. Team Illinois Hockey Club, Inc.*, 240 N.E.3d 446, 453 (Ill. 2024). Elsewhere in their Amended Complaint, Plaintiff cited section 5/1-102(A), where the Illinois General Assembly outlined its broad commitment to extirpating any and all forms of disability discrimination in "the availability of public accommodations" in Illinois via the IHRA. (Doc. 6, pp. 5, 7); 775 ILCS 5/1-102(A).[7] Construing section 5/1-102(A) liberally, it is clear that Plaintiff has made a prima facie showing that District 187 violated the IHRA.

Nor is it fair to claim that Plaintiff cannot base ADA, Section 504, and IHRA claims on the failure to properly implement an individualized education program ("IEP"). (*See* Doc. 11, ¶¶ 2–3; Doc. 12, pp. 3–7). This argument is addressed in the following section. *See infra* pp. 11–13.

### REQUEST FOR DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

District 187 moves to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the IDEA. (Doc. 11, ¶¶ 2–3; Doc. 12, pp. 3–7). Congress enacted the IDEA to ensure that children with disabilities could access to a free and appropriate public education. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 157 (2017). To that end, the IDEA gives states federal funding in exchange for providing disabled children with personalized education plans to facilitate their access to a FAPE. 20 U.S.C. § 1411(a). These IEPs—

---

[7] Plaintiff also clarified their position in their Reply to the Motion to Dismiss: that the IHRA's "strong public policy commitment to ensuring that individuals in Illinois are free from discrimination in all areas of public life" made it a civil rights violation to discriminate against students by reason of their disabilities. (Doc. 13, p. 14).

governed by a complex administrative scheme developed to resolve disputes between students, parents, and teachers—would be tailored to meet each student's unique educational needs. *Id*. §§ 1415(f)–(g). One of the IDEA's provisions "addresses the Act's relationship with other laws protecting" children from disability discrimination. *Fry*, 580 U.S. at 157. Section 1415(l) provides that nothing in the IDEA "shall be construed to restrict or limit the rights, procedures, and remedies available under" the ADA, Section 504, or any other federal law protecting the rights of children with disabilities. 20 U.S.C. § 1415(l). It further requires that, before filing a civil action under those laws seeking relief also available under the IDEA, a plaintiff must exhaust the IEP-modification procedure set forth in sections 1415(f) and 1415(g) of the IDEA. *See id*. §§ 1415(f)–(g).

Citing the IDEA exhaustion provision, District 187 makes a three-part argument to dismiss the Amended Complaint. They first note that each claim arises from "the same alleged conduct: the temporary cessation of speech and language services required by M.H.'s IEP." (Doc. 12, p. 3). Secondly, that means each claim boils down to a dispute about the proper implementation of an IEP meant to facilitate M.H.'s access to a FAPE, and that Plaintiff is foreclosed from seeking relief under the ADA, Section 504, the IHRA, and the CRRRA until they seek relief under the IDEA. (*Id.*, pp. 3–7). Finally, since Plaintiff has not done so, District 187 asserts that Plaintiff cannot seek relief under the ADA or its sister statutes at this time. (*Id.*).

Courts generally evaluate the applicability of the IDEA's exhaustion requirement using the *Fry* test: if "the gravamen of the plaintiff's suit is something

other than the denial of the IDEA's core guarantee,"[8] of access to a FAPE, then the plaintiff is not required to satisfy the IDEA's exhaustion requirement. *Fry*, 580 U.S. at 158. The District claims that because the gravamen of Plaintiff's suit is the denial of a FAPE, she is required to administratively exhaust the IDEA before seeking relief under the ADA, IHRA, Section 504, and the CRRRA. (Doc. 12, pp. 3–7).

But the *Fry* test includes an important exception. In cases where a plaintiff seeks relief that the IDEA cannot provide, they are not required to satisfy the IDEA's administrative exhaustion requirement. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023). Despite District 187's contention, *see* Doc. 12, p. 6, seeking that sort of relief is not an "artful" attempt to circumvent the Court's holding in *Fry*, *see Fry*, 580 U.S. at 169. Rather, it was an exception consciously bracketed out of their ruling. *Id.* at 170. Footnotes four and eight of the Supreme Court's opinion in *Fry* make that omission clear. *Id.* at 165 n.4 ("In reaching these conclusions, we leave for another day a further question about the meaning of § 1415(l): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—here, money damages for emotional distress—is not one that an IDEA hearing officer may award?"), 169 n.8 ("Once again, we do not address here (or anywhere else in this opinion) a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy that an IDEA officer cannot give"). The Court reiterated that this omission was intentional in *Luna Perez*, 598 U.S. at 149.

---

[8] Like pure disability-based discrimination. *Fry*, 580 U.S. at 172–75.

("the Court in *Fry* went out of its way to reserve rather than decide the question we now face").[9]

In this case, there is no need to apply the *Fry* test because Plaintiff seeks compensatory, emotional distress, and punitive damages, (Doc. 6, pp. 6–14), three remedies that the IDEA cannot provide, *Luna Perez*, 598 U.S. at 146–47.

The District cites two cases to support their contention that Plaintiff's allegations ought to be governed by the *Fry* test. In *B. v. Board of Education of Hinsdale Township High School District 86*, a seventeen-year-old deaf student sought compensatory damages and equitable relief after her school failed to provide in-person CART services. (Doc. 12, p. 4); No. 24 CV 12218, 2025 WL 1666697, at \*3 (N.D. Ill. June 12, 2025). There, the plaintiff asked the court to reinstate and enforce her IEP—relief squarely available under the IDEA—alongside compensatory damages, which the IDEA cannot provide. 2025 WL 1666697 at \*3. The Court analyzed this "mixed relief" request in light of *Luna Perez* and concluded based on the plain terms of the decision that exhaustion is required when mixed relief is sought, but not when the plaintiff only seeks compensatory damages. *Id.* at \*11 (citing *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 n.9 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 570 (2024); *Chavez as next friend for J.C. v. Brownsville Indep. Sch. Dist.*, 2023 WL 3918987, at \*2 (5th Cir. June 9, 2023)).

---

[9] Granted, the Court in *Luna Perez* noted that plaintiffs seeking mixed relief (that is, a type of equitable relief that is available under the IDEA and at least one other type of relief that is not) might be required to meet the IDEA's administrative exhaustion requirement. 598 U.S. at 150. But Plaintiff here is not seeking mixed relief. What they seek are monetary damages and compensation and attorney's fees, nothing more. Nowhere in the Amended Complaint does Plaintiff request the reinstatement or modification of M.H.'s IEP. (Doc. 6, pp. 6–14; *see* Doc. 13, pp. 4–5).

The District next cites *Pierce as Next Friend of B.P. v. Whiteside School Dist. No. 115 Board of Education*, which involved a hard-of-hearing child whose school failed to implement his IEP. No. 22-CV-1153-JPG, 2022 WL 14813416, at *1 (S.D. Ill. Oct. 26, 2022). But *Pierce* was decided before *Luna Perez*, and thus did not have the benefit of the Supreme Court's clarification that exhaustion is unnecessary when a plaintiff seeks relief the IDEA cannot provide. Applying the pre-*Luna Perez*, *Fry*-gravamen framework, *Pierce* required exhaustion because the plaintiff sought reinstatement of his IEP—relief available under the IDEA. *Id.* at *1–2.

Neither case assists the District here. In contrast to the plaintiffs in *B.* and *Pierce*, Williams only seeks damages that the IDEA cannot provide.[10] Under *Luna Perez*, exhaustion is therefore not required, and the District's authorities are inapposite. In light of the Court's holding in *Luna Perez*, the District's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is **DENIED**.

### REQUEST FOR JUDGMENT ON THE PLEADINGS

District 187 next moves for judgment on the pleadings on two counts. Count II alleges associational discrimination against Williams in violation of Title II of the ADA and Count V alleges the same in violation of the IHRA. (Doc. 12, pp. 7–10). When evaluating a motion for judgment on the pleadings, courts apply largely the same standard used to evaluate a motion to dismiss for failure to state a claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). The key difference is that

---

[10] It should be noted that the IDEA offers parties an avenue to recover some, if not all of their attorney's fees at the court's discretion. 20 U.S.C. § 1415(i)(3). Still, the *Luna Perez* exception applies in this case. In *Luna Perez*, the Supreme Court defined mixed relief relatively narrowly. A plaintiff seeks mixed relief when they seek "both damages and the sort of equitable relief IDEA provides." 598 U.S. at 150. Seeking compensation for attorney's fees is not "the sort of equitable relief IDEA provides."

defendants may seek dismissal based on affirmative defenses when moving for a judgment on the pleadings. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013). "A plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," but "when the allegations of the complaint reveal that relief is barred, dismissal is appropriate." *Hammond as next friends of R.W.H. v. Cahokia Unit Sch. Dist. #187*, No. 3:25-CV-01283-DWD 2026 WL 852531, at \*3 (S.D. Ill. Mar. 27, 2026) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)).

## I.    Associational Discrimination under Title II of the ADA

To survive a motion for judgment on the pleadings, an associational discrimination claim under the ADA must meet two requirements. First, the claim must be within the statute's "zone of interests," defined as the sphere of interests "sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Friends of Trumbull v. Chicago Bd. of Educ.*, 123 F. Supp. 3d 990, 995 (N.D. Ill. 2015) (quoting *Air Courier Conference of Am. v. Am. Postal Workers Union AFL–CIO*, 498 U.S. 517, 523–24 (1991)). Courts can determine whether a plaintiff's complaint falls within a statute's zone of interests by developing an understanding of that statute's purpose. Its text and legislative history should be the first places courts turn to when formulating such an understanding. *Air Courier*, 498 U.S. at 524. Federal regulations can be informative as well but are secondary to the statute's text and legislative history. *Friends of Trumbull*, 123 F. Supp. 3d at 996–97. When legislative history and statutory text conflict, the text takes precedence. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017);

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed"). Next, the plaintiff must make a prima facie showing that they suffered "some specific, separate, and direct injury as a result of his association with the disabled individual." *Hale v. Pace*, No. 09 C 5131, 2011 WL 1303369, at *5 (N.D. Ill. Mar. 31, 2011) (quoting *Micek v. City of Chicago*, No. 98 C 6757, 1999 WL 966970, at *3 (N.D. Ill. Oct. 4, 1999)).

Determining whether an associational discrimination claim falls within Title II's zone of interests is difficult. The Seventh Circuit has been almost completely silent on the issue, as has the Supreme Court. *See Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 798 (N.D. Ill. 2024); *Chosen Consulting, LLC v. Town Council of Highland, Indiana*, No. 2:20-CV-246-PPS, 2024 WL 3983742, at *6 (N.D. Ind. Aug. 28, 2024), aff'd, 148 F.4th 451 (7th Cir. 2025). The guidance available is relatively limited. *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) (noting that Title II's enforcement provision "extends relief not just to 'qualified individuals with a disability,' but to 'any person alleging discrimination on the basis of disability . . . .'" (quoting 42 U.S.C. § 12133)); *Hummel v. St Joseph County Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016) (recognizing that Title II prohibits discrimination against individuals associated with the disabled); *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 611 (7th Cir. 2020) (stating that Title II "authorizes suit by 'any person alleging discrimination on the basis of disability'" (quoting 42 U.S.C. § 12133)). In contrast, the place of associational discrimination in Title I's zone of interests has been well settled in this

Circuit for decades.[11] *See Larimer v. Int'l Bus. Machines Corp.*, 370 F.3d 698, 700–02 (7th Cir. 2004). As a consequence of the relative dearth of guidance on how to construe Title II's zone of interests with respect to associational discrimination claims, district courts in this Circuit have turned to the statutory text of Title II, its corresponding legislative history, and its federal regulations to resolve disputes about the relationship between associational discrimination and Title II's zone of interests.[12] *See, e.g., Oak Ridge Care Ctr., Inc. v. Racine Cnty., Wis.*, 896 F. Supp. 867, 871–72 (E.D. Wis. 1995); *Micek*, 1999 WL 966970, at *4; *Schneider v. Cnty. of Will, State of Illinois*, 190 F. Supp. 2d 1082, 1087–91 (N.D. Ill. 2002); *Hale v. Pace*, 2011 WL 1303369, at *4 (N.D. Ill. Mar. 31, 2011); *Means v. St. Joseph Cnty. Bd. of Comm'rs*, No. 3:10-CV-003 JD, 2011 WL 4452244, at *4 (N.D. Ind. Sep. 26, 2011); *A.B. ex rel. Kehoe v. Housing Authority of South Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *3 (N.D. Ind. May 18, 2012); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 672 (S.D. Ind. 2015). This Court will do the same while laboring to harmonize its interpretation of Title II with the limited guidance that can be inferred from existing Seventh Circuit and Supreme Court Title II precedent.

---

[11] Title I prohibits disability discrimination in employment, 42 U.S.C. § 12112, whereas Title II prohibits disability discrimination in access to public accommodations, *Id*. § 12132.

[12] It should be noted that this Court will be conflating analysis about Title II standing with Title II's zone of interests. Courts in this Circuit typically treat disputes related to Title II standing and its zone of interests identically. *See Micek*, 1999 WL 966970, at *3 n.6. Although, showing that one has standing to sue under a statute does not necessarily mean that he or she falls within the statute's zone of interests. *Air Courier*, 498 U.S. at 524 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).

Generally, associational discrimination claims fall within Title II's zone of interests.[13] Title II's enforcement section states that the "remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to *any person alleging discrimination on the basis of disability* in violation of section 12132 of this title." 42 U.S.C. § 12133 (citation modified). Any person—even those who are not themselves disabled—can file suit under Title II as long disability was a reason for their exclusion from the benefits or services of a public entity. *Access Living*, 958 F.3d at 611. Title II's regulations confirm that the ADA's framers intended for associational discrimination to be prohibited by section 12132. Those regulations state that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g) (1994). This expansive reading of Title II's enforcement provision is supported by the ADA's legislative history. Congress intended for the ADA to establish "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To that end, Congress noted that "Title II should be read to incorporate provisions of titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973, such as Section 102(b)(4) of the ADA [codified as 42 U.S.C. § 12112(b)(4)]." H.R. Report No. 101–485(III), 101st Cong., 2nd Sess. 51 (1990), reprinted in 1990

---

[13] Some exceptions exist, like a for-profit business whose services only incidentally or indirectly benefit the disabled. *See Discovery House*, 319 F.3d at 280.

U.S.C.C.A.N. 445, 474. Section 12112(b)(4) is part of Title I's core anti-discrimination provision. That provision prohibits associational discrimination in any and all employment related decisions. 42 U.S.C. §§ 12112(a)–(b). Thus, it was Congress' intent for Title II's enforcement section to mimic Title I's, including the latter's prohibition of associational discrimination.

This interpretation of Title II's zone of interests coheres well with binding Seventh Circuit and Supreme Court precedent. In *Hummel v. St. Joseph County Bd. of Comm'rs*, the Seventh Circuit interpreted Title II's federal regulations almost identically to this Court. 817 F.3d 1010. They held that "the ADA recognizes that a person can be harmed by discrimination against someone with whom he or she is associated." *Id.* at 1019. Although not as squarely related to Title II's enforcement provision, the Supreme Court's recent decision in *Stanley v. City of Sanford, Fla.* suggested that the phrase discriminate "against a qualified individual on the basis of disability" in Title I did "not require a qualified individual to be disabled." 606 U.S. 46, 62 n.4 (2025). Consequently, the Court found that associational discrimination was prohibited by Title I. *Id.* Title II's enforcement section uses a similar phrase— "any person alleging discrimination on the basis of disability"—and so it would be reasonable to infer that Title II also prohibits discrimination against individuals on the basis of their association with the disabled. 42 U.S.C. § 12133. Furthermore, district courts in this Circuit have interpreted Title II's statutory text, regulations, and legislative history to the same effect. *See, e.g., Oak Ridge*, 896 F. Supp. at 872– 73 (reading Title II's regulations (28 C.F.R. § 35.130(g)) and legislative history (H.R. Report No. 101-485(III)) to confirm that it prohibits associational discrimination);

*Schneider*, 190 F. Supp. 2d at 1088–92 (same); *Means*, 2011 WL 4452244, at \*4 (concluding that Title II prohibits associational discrimination based on a reading of its implementing regulations (28 C.F.R. § 35.130(g))); *A.B. ex rel. Kehoe*, 2012 WL 1877740, at \*3 (same); *Hammond*, 2026 WL 852531, at \*3–4 (holding that Title II's zone of interests includes claims made by plaintiffs who can merely "trace their alleged injury to any proscribed discrimination within [section 12133] of the ADA."). Even though that interpretation is not held unanimously, *see Friends of Trumbull*, 123 F. Supp. 3d at 994–98 (rejecting the proposition that associational discrimination is prohibited by Title II's enforcement provision and claiming that even if Title II's implementing regulations suggest that it is, that fact is not enough to pull associational discrimination back into Title II's zone of interests), it seems to be the majority view among district courts in this Circuit and is certainly well supported by a conscientious reading of Title II's text, legislative history, and implementing regulations.

Williams alleges discrimination on the basis of her proximity to M.H. (Doc. 6, pp. 11–13). Her claim thus falls within Title II's zone of interests.

But falling within Title II's zone of interests is not enough to survive a motion for judgment on the pleadings. Plaintiff's injury must be specific, separate from M.H.'s, and directly related to his disabled status. *Hale*, 2011 WL 1303369, at \*5. This Court finds that Plaintiff's claims of associational discrimination are sufficiently specific, separate, and direct to withstand the District's motion for judgment on the pleadings. They are specific since Plaintiff alleges that Williams' status as M.H.'s mother makes her unable to participate in decisions that are relevant to his ability

to access a FAPE. (Doc. 6, pp. 11–13). They also allege a separate injury compared to the one allegedly experienced by M.H. (*Id.*). The basis of Count V is not M.H.'s access to a FAPE, but Williams' inability to effectively advocate on behalf of her son and be involved in decisions that influence his academic and social development. (*Id.*). *See Hammond*, 2026 WL 852531, at *4. At stake here is not just a feeling of not being "heard regarding educational decisions" related to M.H., but Williams' ability to direct the upbringing of her child, a right that has long been recognized by the Supreme Court. (Doc. 12, p. 8; *see* Doc. 13, p. 7); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534 (1925); *Mirabelli v. Bonta*, 607 U.S. 492, 497 (2026).

This case is different than *Simenson v. Hoffman*, which the District references when arguing that an associational discrimination claim cannot be brought if the injury alleged to the associated party is the same as the foundational injury. (*See* Doc. 12, p. 9); No. 95 C 1401, 1995 WL 631804, at *6 (N.D. Ill. Oct. 24, 1995). In *Simenson*, Jon and Mary Simenson had sued two medical centers for refusing to treat their disabled two-year-old son. *Id.* at *1. After their son was refused treatment, they were asked to leave. *Id.* The Court held that because the "Simensons were not at the medical center for any purpose other than to seek treatment for" their son, their removal "was merely the final act in the decision to deny him medical treatment," and thus not a separate injury. *Id.* at *6. In this case, however, Plaintiff sought to be included in decisions regarding M.H.'s access to a FAPE so she could direct his upbringing in the way she saw fit. *See Hammond*, 2026 WL 852531, at *5. Thus, her

claim of associational discrimination alleges a separate injury from M.H.'s denial of a FAPE.

District 187 turns to the IDEA for help, but it provides none. (*See* Doc. 12, pp. 9–10). Their argument is simply a reiteration of the same IDEA exhaustion thesis: since Plaintiff has not administratively exhausted the procedures set forth by the IDEA, they are foreclosed from alleging counts of associational discrimination in violation of the ADA and IHRA. (*Id.*). The District's sole legal authority for this contention is *Fry* and their only statutory authority is section 1415(l) of the IDEA. (*Id.*). Neither supports the District's claim. The *Fry* Court was explicit that their holding in *Fry* did not apply to cases where plaintiffs sought remedies that the IDEA could not provide. *Luna Perez*, 598 U.S. at 149. This is one such case.

## II.    Associational Discrimination under the IHRA

An associational discrimination claim under the IHRA withstands a motion for judgment on the pleadings when it passes the same threshold as an ADA associational discrimination claim. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) ("Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework"). That means Count II of the Amended Complaint, (Doc. 6, pp. 6–8), will survive the District's motion for judgment on the pleadings if it can be shown that associational discrimination is included in the IHRA's zone of interests and that Plaintiff's particular associational discrimination claim is specific, separate, and directly related to M.H.'s disability.

As with Title II of the ADA, Seventh Circuit precedent pertaining to the IHRA's zone of interests is still in its early stages. To date, only two district courts in this

Circuit have weighed in on associational discrimination's place within the IHRA's zone of interests. *Hammond*, 2026 WL 852531, at \*5; *Leonard v. Alton Community Unit Sch. Dist. 11 Board of Education*, No. 26-CV-15-RJD, 2026 WL 1900199, at \*3 (S.D. Ill. July 2, 2026). And as with Title II's zone of interests, this Court will first turn to the IHRA's statutory text, then compare the resulting conclusion with the findings of other courts in this Circuit.

The IHRA's statutory text is quite clear in stating that associational discrimination falls within the IHRA's zone of interests. The District is incorrect when asserting that "there is no express authority for a claim of associational discrimination under the IHRA." (Doc. 12, p. 9). The IHRA prohibits discrimination on the basis of, among other characteristics, race, religion, sex, and disability. 775 ILCS 5/1-102(A). For the purposes of the IHRA, disability discrimination includes "discrimination against an individual because of the individual's association with a person with a disability." *Id*. 5/1-103(I)(2). Typically, courts do not stop their zone of interests analysis here. Usually, they try to compare their interpretations of the statutory text with the ones they can glean from a reading of that statute's legislative history. *See, e.g., Air Courier*, 498 U.S. at 524. But because the text of the IHRA is so clear, there is no need to do so. After all, zone of interests analysis requires courts to use the "traditional tools of statutory interpretation" to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). When the text of the statute is clear, that job is done. *Bostock*, 590 U.S. 673–74 ("This Court has explained many times over many years that, when the meaning of the statute's

terms is plain, our job is at an end.").[14] Fortunately, other district courts within this Circuit have reached the same conclusion. *Hammond*, 2026 WL 852531, at *5 (finding that because the IHRA must be construed liberally, a plaintiff's associational discrimination claim survives a motion for judgment on the pleadings); *Leonard*, 2026 WL 1900199, at *3 (reading section 5/1-103(I)(2) to prohibit discrimination on the basis of Plaintiff's association with the disabled). *But see Ruckebeil v. Cancer Treatment Centers of Am., Inc.*, No. 15 C 08259, 2016 WL 878585, at *5 (N.D. Ill. Mar. 8, 2016).

In attempting to show that associational discrimination falls outside the IHRA's zone of interests, the District places undue emphasis on *Calabotta v. Pibro Animal Health Corp.*, No. 17-CV-03197, 2018 WL 813583 (C.D. Ill. Feb. 9, 2018). While the District is right that the court in *Calabotta* stated that "Illinois courts have not explicitly addressed whether the Illinois Human Rights Act covers associational disability claims," the court later noted that "it would be possible for a court to hold that such a claim exists." *Id.* at *3. Since *Calabotta* was decided, a court in this Circuit has done precisely that. *Hammond*, 2026 WL 852531, at *5 ("Based on the analysis above, and giving a liberal construction to the IHRA, Plaintiffs have adequately pled they were unlawfully discriminated against by Defendant based on their association with R.W.H.").

---

[14] Even if there were no explicit statutory reference to associational discrimination in the IHRA, the Illinois Supreme Court has advised lower courts to construe the IHRA liberally. *M.U.*, 240 N.E.3d at 456. A liberal construction of "disability discrimination" would include discrimination against those who are associated with people with disabilities. *Hammond*, 2026 WL 852531, at *5.

Lastly, this Court asks whether Plaintiff's associational discrimination claim is sufficiently specific, separate, and direct to withstand the District's motion for judgment on the pleadings. The same logic from the ADA analysis above applies here. *See supra* pp. 19–20. The District's motion is therefore **DENIED**.

### REQUEST TO STRIKE PUNITIVE AND EMOTIONAL DISTRESS DAMAGES

Lastly, the District moves to strike Plaintiff's request for punitive and emotional distress damages pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) authorizes the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts are granted "considerable discretion in striking" material under Rule 12(f). *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Claims "may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The District asks this Court to strike Plaintiff's request for punitive and emotional distress damages under the ADA and Section 504. (Doc. 13, pp. 13–14). They also move for this Court to strike Plaintiff's prayer for punitive damages under the CRRRA. (*Id.*, p. 14). This Court will start by analyzing the remedies offered by the ADA and Section 504 before moving on to the CRRRA.

Punitive damages are not available in private causes of action under the ADA, nor are they available under Section 504. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (citing *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002)). Likewise, emotional damages are not recoverable under Spending Clause statutes like Section 504. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212,

222 (2022). Although the ADA is not a Spending Clause statute, the Supreme Court has held that the remedies it offers in private causes of action are equivalent to the ones offered by Section 504. *Barnes*, 536 U.S. at 189 n.3. District 187's Motion to Strike Plaintiff's request for punitive and emotional distress damages under the ADA and Section 504 is therefore **GRANTED**.

In response, Plaintiff contends that striking damages at the pleading stage is premature. (Doc. 13, pp. 17–18). But given the wide discretion this Court has in resolving 12(f) claims and the fact that both the ADA and Section 504 expressly foreclose Plaintiff from recuperating both punitive and emotional damages in private causes of action, striking them at this stage is reasonable.

Turning to the CRRRA, it is this Court's belief that the CRRRA allows plaintiffs to recover punitive damages in private causes of action, in spite of the District's claims to the contrary. (Doc. 12, p. 14). The CRRRA makes "whoever injures another by violation of this Act . . . liable for each and every offense for all remedies available at law, including, but not limited to, damages for past, current, and future monetary losses, emotional pain . . . ." 775 ILCS 60/20. Although punitive damages are not expressly referenced in the CRRRA, the phrase "including, but not limited to" in section 60/20 implies that the remedies set forth in that subchapter are not exhaustive. *See* William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 64 (2016). Insofar as the CRRRA covers "all remedies available at law," it stands that punitive damages would be covered as well. This interpretation of section 60/20 of the CRRRA is consistent with recent decisions issued by courts in this Circuit. *See, e.g., Hammond,* 2026 WL 852531, at \*8. The

District's Motion to strike Plaintiff's request for punitive damages under the CRRRA is **DENIED**.

CONCLUSION

For the reasons set forth above, Defendant Cahokia Unit School District #187 Board of Education's Motion to Dismiss (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

**DATED:  August 6, 2026**

_____
**STEPHEN P. McGLYNN**
**U.S. District Judge**